## LEVALLY v. HARMON's Administrator.

1. **Deposition**: DESIGNATION OF OFFICER. The law contemplates the issuing of a commission to take depositions to some officer, either by his name of office, or his individual name and official style, together with the name of the county and State where he resides: It is not regular to direct it to several officers in the alternative.

2. **Contract**: COTEMPORANEOUS AGREEMENTS. On June 1st, 1857, the County Court of Bremer entered into a contract with B. and L. for the erection of a court house for said county, in which it was provided: "Said house to be agreeable to the draft, plan and specifications now on file in the office of the county judge, * * * * and which plan and specifications to be taken as, and are hereby made a part of this contract, and to be observed in each and every particular as though herein written. * * * * The county judge or his superintendent, shall have the privilege of making any alterations they may deem proper," &c. On the 27th day of July, 1857, the county having a controversy with and an action pending against one H. adjusted the same, the said H. executing his promissory note payable to said contractors, "on or before the court house in and for the county of Bremer, State of Iowa, is completed;" and on the same day the county judge executed in writing his agreement to dismiss the pending suit against H. in which it was recited as consideration "that the said H. has this day given his promissory notes payable to B. & L. for the use of said county; * * * * one for one thousand dollars payable when the court house is completed according to the plan and specifications on file in the office of the county judge of Bremer county:" *Held*, 1. That the recital of consideration in

Levally v. Harmon's Administrator.

the agreement executed by the county judge, did not control the terms of the note: 2. That if the court house was completed substantially as required by the plans and specifications, and was accepted by the board of supervisors acting in good faith, the holder of the note was entitled to recover.

*Appeal from Bremer District Court.*

TUESDAY, JUNE 19.

PLAINTIFF declares upon the following instrument:

"WAVERLY, July 27, 1857.

On or before the court house in and for the county of Bremer, State of Iowa, is completed, I promise to pay Beebe and Levally, or order, for the use of the county of Bremer, one thousand dollars, value received.

W. P. HARMON."

On the same day the county judge made and signed the following agreement:

"COUNTY JUDGE'S OFFICE, July 27, 1857.

I, Jeremiah Farris, county judge of Bremer county, and State of Iowa, do agree that for and in consideration that the said W. P. Harmon has this day given his promissory notes, payable to Beebe and Levally, for the use of the said county; one for the sum of five hundred dollars, payable when the court house for said county, and in the town of Waverly, is so far constructed that the walls are up; and one for five hundred dollars when said house is inclosed, and one for one thousand dollars, payable when the court house is completed, according to plan and specifications on file in the office of the county judge of Bremer county, which said notes are for full and complete satisfaction of a contract to convey five blocks of lots by the said W. P. Harmon, and to the

county of Bremer; and I will, and by these presents do withdraw all suits, either in law or equity, now pending, wherein W. P. Harmon is defendant, and the county of Bremer plaintiff.

"Given under my hand, and the seal of the county, this 27th day of July, A. D. 1857.

"JEREMIAH FARRIS,
      " *County Judge.*"

Beebe and Levally were the contractors for building this court house; the contract bearing date June 1, 1857. On this contract they received, August 5, 1857, a county warrant for $2,000 ; and on the same day exchanged the same for the three notes described in the above agreement. In November, 1859, Beebe transferred his interest in the court house contract to Levally, as also his interest in the notes, and Levally assumed all the liabilities resting upon the firm thereunder.

In April, 1861, Levally made a written proposition by which he was to finish the court house in a manner different in many respects from the original plan and specifications; and this proposition was accepted by the board of supervisors. It seems that at this time the county had sued the contractors; that this suit was to be continued, and that on the 15th of October, 1861, the supervisors made an order to withdraw said suit; accepting the court house, and directing warrants to issue for the balance due plaintiffs on the original contract for building the same.

The original contract provided as follows: "Said house to be built agreeable to the draft, plan and specifications now on file in the office of the county judge. * * * And which plan and specifications to be taken as and are hereby made a part of this contract, and to be observed in each and every particular as though herein written." By the specifications it is provided, among other things, that "the county

judge or his superintendent shall have the privilege of making any alterations they may deem proper without in any way interfering with this agreement and contract made upon said plans, and without additional expense, unless such alterations cost more than is herein specified or contracted for, the additional expense in such case to be agreed upon in writing between the parties in all particulars. * * * Finally, to complete the whole of the above work in the best and most workmanlike manner, according to the working drawings, and the general intent and meaning of these specifications; subject at all times to the direction and decision of the county judge or his superintendent."

Plaintiff took the deposition of a witness under a notice and commission directed " to the clerk of the District Court of Linn county, State of Kansas, or any notary public in said State or any commissioner appointed by the governor of the State of Iowa, to take acknowledgments of deeds in Kansas." Defendant took exceptions to the notice before the *dedimus* was issued, and to the deposition after its return, because, among other things, the notice was in the alternative and did not name the residence of the officer, nor the place where the deposition would be taken. The objection was sustained, and to this plaintiff excepted.

The testimony tended to show that the court house was never completed according to the original plan and specifications; and there was some proof to show that it was not fully completed according to Levally's proposition of April, 1861.

Plaintiff claimed that the agreement made by the county judge with Harmon, could not control the note sued on, nor incorporate into it conditions not in the note itself; and that in no event could plaintiff be prejudiced by the terms of said contemporaneous writing. He also claimed that if the court house was substantially completed, in accordance with the new arrangement or contract with the

supervisors, and was in fact accepted by them, then he was entitled to recover.

Defendant, on the other hand, claimed that the note was to be read in the light of the other and contemporaneous agreement; that the court house was never completed *according to the plan and specifications;* that if not, he was not liable, whatever new arrangements may have been made with the contractor by the supervisors. The court below sustained defendant's view, and instructed the jury accordingly. Verdict, that the "note was not due when the suit was commenced," judgment accordingly, and plaintiff appeals.

*B. W. Poor* for the appellant.

*J. E. Burke* for the appellee.

WRIGHT, J. — I. Was the deposition properly suppressed? Our opinion is, that the law contemplates the issuing of the commission to some officer, either by his name of office or by his individual name and official style, together with the name of the State and county where he resides, and that it is not regular to direct it, as in this case, to several officers in the alternative. If the course adopted in this instance is allowable, then it would be equally so to direct to any notary public or clerk of a court of record or other competent officer within the United States. The statute designed that there should be some certainty as to the officer and place where the deposition was to be taken. Revision, §§ 4068, 4069, 4070, 4078, 4081; *Lyon* v. *Burrows,* 13 Iowa, 488; *Jones* v. *Smith,* 6 Id., 233; *Plummer* v. *Roads,* 4 Id., 587.

1. DEPOSITIONS: designation of officer.

II. The effect of the agreement signed by the county judge, is, however, the important question in the case, and that to which counsel have, for the most part, directed their argument. Defendant insists that this is a contemporaneous collateral written agreement, fixing and specifying the condition upon which the note was to become payable; that this and the note are to be taken together as one contract, and that as the court house was never completed "*according to the plan and specifications then on file in the office of the county judge,*" the note is not due and cannot, therefore, be collected. In this construction we find ourselves unable to concur.

*2. CONTRACT: contemporaneous agreement.*

The primary, and indeed, sole object of the agreement signed by the county judge, seems to have been to recite the terms upon which he settled with defendant upon his contract to convey certain lots to the county; and the further agreement that all suits against said defendant in favor of the county were to be withdrawn. It is true, that he undertakes to recite the consideration, and, in doing so, refers to certain notes including the one now in suit. But it is nothing more than a recital; nothing more than a reference to the consideration. This particular reference or recital, was not necessary to the validity of the instrument. The contract would have been just as binding, if it had stated a consideration without naming it; and, indeed, a sufficient consideration would have been presumed if a reference to it had been omitted entirely. Being, then, a mere *recital*, shall it be construed as changing the note, or as fixing a condition of payment different from that named in the note itself? There is certainly no *covenant*, no *agreement* that the note is not to be paid except upon the condition or terms in said agreement contained. And if this had been the intention of the parties, it would have been easy to have so stated. Failing to do so, we must regard it as an effort

to recite the terms of the notes as making a misrecital when referring to this note, and that therefore, the note itself, rather than this collateral agreement, must be accepted as the best and sole exponent of the intention of the parties.

A brief reference to some cases will show the marked difference between those generally relied upon to sustain appellee's position and the one at bar.

In *Bailey* v. *Cromwell*, 3 Scam., 71, the note was given for the purchase of a negro girl, and an agreement was made at the same time that the note was *not to be paid until* papers were furnished by the payee showing that the girl was legally held by him in servitude. And it was very properly held that the note and agreement were to be taken as forming one contract, and that until the condition named was complied with, plaintiff could not recover.

*Bowser* v. *Bliss*, 7 Blackf., 344, was a note for the payment of money, the consideration being to make and sell fanning mills within certain limits. There was an article of agreement given at the same time, to the effect that the note was to be paid, provided that the payee did not make or sell, within the prescribed limits, more than four mills. It was held that the burden of proof was upon defendant to show that the plaintiff had made or sold more than the four mills mentioned. And while it is not so said in terms, it is fairly inferable that if he had so sold or made the condition of payment would have been violated and there could have been no recovery. To this there is certainly no just objection, for the condition in the agreement was in effect a covenant that if plaintiff *did* sell or make more defendant was not to pay the note.

In *Makepeace* v. *President of Harvard College*, 10 Pick., 298, there was a note for $4,310, and the payee agreed that if the maker conveyed certain lands to him he should be allowed, on the note, $3,200; and if any sum should be

paid in cash or otherwise, double the amount thereof should be indorsed upon the note,     *    * ·· *·  with the further clause that "the above agreement is to be carried into effect in three months." It was most consistently held that these instruments, made at one and the same time, should be taken as parts of the same transaction; but that as the maker had not complied with the terms of the agreement, beyond conveying the land, plaintiff should recover the balance due on the note, after deducting the $3,200.

*Stocking* v. *Fairchild*, 5 Pick., 181, only holds that a writing on the back of an absolute deed, in the usual form of a condition to a mortgage, was to be taken as a part of the deed.

*Hunt* v. *Livermore*, Id., 395, was where defendant gave his note for certain land which he had agreed to purchase. Plaintiff gave his bond to convey, and also a receipt stating that if the bargain should be rescinded, the note was to be given up on the defendants returning the bond. Nothing could be clearer than that these papers constituted one contract.

And yet all these are very different cases from the one now before us. The starting, leading, cardinal distinction is, that though you read the two papers in the light of each other, the collateral agreement contains no terms limiting or fixing the time or condition for the payment of the note. To illustrate, suppose the agreement had referred to the note for $1,000, as payable absolutely, or without any terms, and hence absolutely, would defendant claim, or could it be claimed, that this changed or altered the condition named in the note, and that it was, therefore, payable whether the court house was ever completed or not? We doubt much whether it would be so claimed. And to give the agreement such effect, would accord an unjust and unwarrantable dignity to a mere recital; make

that a covenant which was not intended as such ; make a misrecital in a collateral instrument control an apparently correct recital in the principal one.

Now, if it appeared that the county agents (supervisors or county judge) had fraudulently, or because they supposed the best interests of the county demanded it, accepted a court house of the contractors in no respect answering that which they undertook to build, so that it could be seen that there was bad faith in accepting a building entirely different from that contemplated at the time defendant made this note, then it might well be claimed that there never had been a completed building within the language of the note even.  But no want of good faith is pretended.  A court house was completed answering substantially the wants of the county, and fairly meeting the general demands of the contract.  The supervisors, acting in good faith, as the agents of the county, and not in conflict with any agreement made with defendant, but fairly in accord with the conditions of the original contract to build itself, accepted the building, settled with and released the plaintiff, and it seems to us when this was done, defendant was liable on this note, whether the completion was or was not " according to the plans and specifications then on file, &c."

Reversed.